

COURT OF COMMON PLEAS
CLERMONT COUNTY, OHIO

MCM MANAGEMENT CORP.,                    :        Case No. _____

2655 Orchard Lake Road, Suite 101

Sylvan Lake, MI  48320

                                         :        **JUDGE HADDAD**
                                                  Judge _____

            Plaintiff,                   :

-vs-

                                         :        **(Jury Demand Endorsed Hereon)**

NAUTILUS INSURANCE COMPANY,

Thomas M. Kuzma, Statutory Agent

7233 East Butherus Drive

Scottsdale, AZ  85260

                                         :

            Defendant.                   :

## COMPLAINT

Now comes, Plaintiff, MCM Management Corp. ("MCM"), and herein states and avers:

1.      MCM is a Michigan corporation with its principal offices located in the City of

Sylvan Lake, Michigan.

2.      Nautilus Insurance Company ("Nautilus") is an Arizona insurance company

authorized to transact business in Ohio, with an address of 7233 E. Butherus Dr., Scottsdale, AZ

85260.

3.      Nautilus issued a policy of insurance to MCM, Policy No. ECP2033412-10 (the

"Policy").  A copy of the Policy is voluminous, is already in the possession of Nautilus and is

available for inspection.

1

4.      The Policy was in effect while MCM was performing work on a project located in the city of New Richmond, Clermont County, Ohio, and known as the Demolition of the Beckjord Generating Station (the "Project").

5.      During the course of the Project, a large chimney stack was demolished via explosive means performed by MCM subcontractors. During the demolition, debris from the stack entered the Ohio River. This caused unexpected and unanticipated property damage.

6.      As part of the Project, Unit 6 of Beckjord Generating Station was also demolished.

7.      During the course of the Project, and unbeknownst at the time of the referenced demolition of Unit 6, debris of Unit 6 entered the Ohio River. This caused unexpected and unanticipated property damage.

8.      It was not initially known by MCM that the demolition of Unit 6 had caused a large coal hopper to enter the Ohio River, as MCM initially believed that the Unit 6 debris was limited to the shoreline of the Ohio River. The large coal hopper caused unexpected and unanticipated property damage.

9.      While it was anticipated that some of Unit 6 debris may fall onto the shoreline, it was neither expected nor anticipated that any debris would land beyond the shoreline and enter the river itself into navigable waters.

10.     MCM initially made a claim under the Policy to Nautilus, in connection with the stack debris that entered the navigable waters of the Ohio River (the "Stack Claim"). Contemporaneous to making the Stack Claim, MCM specifically informed Nautilus of the circumstances concerning the Unit 6 debris as it was known at the time and in order to provide full notice of all known facts for any potential claim in the future.

2

11.     When the full extent of the circumstances of the Unit 6 demolition became apparent, MCM promptly made a formal claim under the Policy to Nautilus related to Unit 6 and the debris that entered the navigable waters of the Ohio River (the "Unit 6 Claim").

12.     MCM was initially paid for only a portion of the Stack Claim.

13.     MCM has now been paid in full for the Stack Claim.

14.     As of the filing of this Complaint, Nautilus wrongfully and in bad faith, refused to honor any portion of the Unit 6 Claim.

15.     This case pertains to a dispute in excess of $15,000.00 and jurisdiction and venue are otherwise proper before this Honorable Court.

### General Allegations

16.     MCM was hired to perform demolition work on the Project.

17.     MCM's work on the Project included, among other things, the demolition of a large chimney stack and the demolition of Unit 6.

18.     On or around October 31, 2020, MCM performed the demolition of Unit 6.

19.     During the demolition of Unit 6, it was observed that debris had fallen along the shoreline of the Ohio River.  Depending on the water level, those debris were, at times, partially submerged, but visible.

20.     At that time, MCM had no knowledge or reason to believe that any debris from the Unit 6 demolition had entered the navigable waters of the Ohio River (beyond the referenced shoreline area).

21.     In January of 2021, the U.S. Army Corp of Engineers required MCM to create an action plan to remove Unit 6 debris from the shoreline.  In other words, and what would be the

first in a pattern of events, a branch of the Federal Government, through a branch of United States Military ordered MCM to take corrective actions and to do so timely.

22.     On February 22, 2021, the chimney smokestack was imploded as part of the Project's demolition process and portions of the stack entered the navigable waters of the Ohio River. This was unexpected, unanticipated and resulted in property damage.

23.     On or around April 8, 2021, Nautilus was notified of the Stack Claim, based upon the events of February 22, 2021.

24.     On April 14, 2021, the U.S. Army Corp of Engineers sent a Compliance Order requesting an action plan for removal of debris from the Ohio River. **Exhibit 1**. The applicable Compliance Order mentions two issues that required the attention of MCM: (1) demolition debris from Unit 6 entering the Ohio River; and (2) approximately 75 cubic yards of smokestack debris that was discharged into the Ohio River. **Exhibit 1**.

25.     On or around April 20, 2021, a discussion was held between MCM and Nautilus' appointed claims adjuster, Nicole Fassak at Berkley Environmental. During that dialogue the Stack Claim was discussed, as was the fact that Unit 6 debris had entered the shoreline along the Ohio River. MCM did not know, at that time, that there was an occurrence under the policy related to Unit 6 debris that had entered the Ohio River (beyond the shoreline), but still fully disclosed the facts, in good faith, to its carrier.

26.     On April 27, 2021, an e-mail was sent from MCM's insurance agent, T.J. Griffin at VTC Insurance Group, to Nautilus' representative Nicole Fassak. **Exhibit 2**. The e-mail included a copy of the Compliance Order from the U.S. Army Corps of Engineers dated April 14, 2021 and MCM's applicable response letter dated April 22, 2021. **Exhibit 2**.

27.     Between April and July of 2021, Nautilus was kept apprised of all plans to remove the stack debris from the Ohio River and Unit 6 debris from the shoreline.

28.     On or around July 1, 2021, MCM submitted a revised action plan to the U.S. Army Corps of Engineers, for debris removal pertaining to the Stack Claim and the Unit 6 debris. Between April 2021 and July 20, 2021 Nautilus was sent seven separate correspondence regarding the Stack Claim and the action plan the U.S. Army Corp. of Engineers ordered concerning the Unit 6 debris efforts. No response was received until July 20 when Nautilus represented that the claim was being reassigned.

29.     Between July 2021 and August 2021 three different adjusters were assigned the claim by Nautilus.

30.     In or around August of 2021, Berkley Environmental (which was acting on behalf of Nautilus) reassigned the claim(s) again, to Robert Burkholder.

31.     On or around August 24, 2021, MCM (through its representatives) specifically discussed the Stack Claim and the known Unit 6 debris issue with Mr. Burkholder.

32.     Nautilus was kept informed of all work that MCM and its contractors were performing to remove the stack debris from the Ohio River and the Unit 6 debris from the shoreline.

33.     Throughout the summer and fall of 2021, MCM continued to perform its work on the Project, while also removing stack debris from the Ohio River and removing Unit 6 debris from the shoreline along the Ohio River.

34.     In or around October of 2021, MCM first learned that during the demolition of Unit 6, the large coal hopper had entered the Ohio River, beyond the shoreline and into the navigable

waters. As soon as practical thereafter, on or around November 1, 2021, MCM made a formal claim with Nautilus (via Berkley Environmental) in connection with the Unit 6 Claim. **Exhibit 3**.

35. Nautilus (via Berkley) was fully aware that the U.S. Army Corp of Engineers had ordered that the coal hopper be removed from the Ohio River by MCM. **Exhibit 3**.

36. Nautilus (via Berkley) was fully aware that MCM's Unit 6 Claim was a separate and distinct occurrence from the Stack Claim. **Exhibit 3**.

37. On or around November 23, 2021, MCM sent Nautilus an "Update letter." **Exhibit 4**. The letter included a November 12, 2021 Progress Report, which included a revised action plan for removal of debris from the Ohio River for: (1) removal or Unit 6 debris; and (2) removing stack debris. **Exhibit 4**.

38. Nautilus, after receiving the November 23, 2021 "Update letter" and supporting information from MCM, did not object to MCM's revised action plan related to either the Stack Claim or Unit 6 Claim.

39. Nautilus, after receiving the November 23, 2021 "Update letter" and supporting information from MCM, did not claim that it needed additional time to investigate either the Stack Claim or Unit 6 Claim.

40. Nautilus, after receiving the November 23, 2021 "Update letter" and supporting information from MCM, did not claim that it needed additional time to negotiate with the U.S. Army Corps of Engineers regarding either the Stack Claim or Unit 6 Claim.

41. Nautilus, after receiving the November 23, 2021 "Update letter" and supporting information from MCM, did not inform MCM that moving forward with the revised action plan would somehow bar MCM from coverage of the Stack Claim or the Unit 6 Claim.

42.     MCM, at all times was, in bad faith misled by Nautilus and lead to believe Nautilus was in favor of MCM moving forward with the revised action plan and that MCM should then submit its bills to Nautilus for reimbursement of the applicable costs being incurred.

43.     On December 10, 2021, Nautilus was forwarded: the "Latest update on hopper removal" and "the contract being negotiated to bring it out of the water." **Exhibit 5**. The applicable draft contract indicated that the work would be done on a time and material basis and included a time and material schedule. **Exhibit 5**.

44.     Nautilus, after receiving the additional information from MCM, on December 10, 2021, did not object to the revised action plan, did not claim that it needed additional time to investigate, did not claim that it needed additional time to negotiate with the U.S. Army Core of Engineers, or otherwise inform MCM that moving forward with a contract to have the hopper removed from the Ohio River would somehow bar MCM from coverage.

45.     On December 13, 2021, MCM (through its insurance agent) provided Nautilus with information that it had requested related to the removal of the hopper from the Ohio River. **Exhibit 6**. Included with the December 13, 2021 e-mail was a Notice to Navigation Interests that work was going to begin to remove the hopper from the Ohio River and that the work was expected to be concluded by December 22, 2021. **Exhibit 6**.

46.     Nautilus, after receiving the additional information from MCM, on December 13, 2021, did not object to the revised action plan, did not claim that it needed additional time to investigate, did not claim that it needed additional time to negotiate with the U.S. Army Core of Engineers, or otherwise inform MCM that moving forward with the removal of the hopper would somehow bar it from coverage.

47.　On December 20, 2021, Nautilus was forwarded a video of the work that was being done to remove the hopper from the Ohio River. **Exhibit 7**.

48.　As of December 20, 2021, Nautilus had not denied the Unit 6 Claim and it was fully aware of the work that MCM was doing to remove the coal hopper from the Ohio River.

49.　As of December 20, 2021, Nautilus had not claimed that MCM's actions were "voluntary" or that they would somehow preclude MCM from having any coverage.

50.　As of December 20, 2021, Nautilus never voiced any concerns about the methods being applied to remove the coal hopper from the Ohio River or the applicable costs that were being incurred to remove the hopper.

51.　In identical fashion to the Stack Claim for which was eventually honored, Nautilus allowed MCM to perform all of the work related to the Unit 6 Claim and acquiesced to the methods and costs that MCM presented.

52.　On January 6, 2022, MCM forwarded the first of the invoices showing the cost of the hopper removal to Nautilus. **Exhibit 8**.

53.　In between January and March of 2022 the Nautilus representative, Mr. Burkholder, verbally informed MCM's agent that he believed there was coverage and that invoices should be paid.

54.　In March of 2022, months after Nautilus had knowingly watched MCM perform work ordered by the United States Army (under the belief that it would be reimbursed for those costs as it ultimately was for the Stack Claim), Nautilus informed MCM that it would be denying coverage for the Unit 6 Claim.

## COUNT I – BREACH OF CONTRACT

55.     MCM hereby incorporates, by this reference, each of the previous allegations of this Complaint, as though each allegation was fully set forth herein.

56.     The Policy is written contract.

57.     MCM paid all premiums under the Policy.

58.     MCM submitted timely notice of its claims (being the Stack Claim and the Unit 6 Claim) to Nautilus for insurance coverage under the Policy.

59.     MCM has complied with all conditions precedent to making valid claims under the Policy.

60.     MCM's claims are not barred by any exclusions.

61.     MCM's Unit 6 Claim is a valid and is a covered occurrence under the Policy.

62.     MCM has fully performed all obligations and satisfied all conditions and requirements under the Policy. To date, MCM is still owed for the costs of performing the work necessary to remove the Unit 6 debris from the Ohio River ($1,299,157.66), plus any applicable attorney's fees, costs and interest to which MCM may be entitled.

63.     Nautilus by failing to honor a valid and covered claim under the Policy, has materially breached its contractual obligations under the Policy and has caused MCM damage in the amount of $1,299,157.66, in addition to attorney's fees and applicable costs.

## COUNT II – BAD FAITH CLAIM DENIAL

64.     MCM hereby incorporates, by this reference, each of the previous allegations of this Complaint, as though each allegation was fully set forth herein.

65.     MCM submitted timely notice of its applicable insurance claims (being the Stack Claim and the Unit 6 Claim) to Nautilus for insurance coverage under the Policy.

66.     MCM has complied with all conditions precedent to making valid claims on the Policy.

67.     MCM's claims are not barred by any exclusions.

68.     Nautilus has, in bad faith, denied coverage of the claim under the Policy.

69.     On numerous occasions, MCM communicated to Nautilus all information known, updated information when it became known, all orders received from and action plans submitted to the U.S. Army.

70.     Nautilus was privy to the exact same information, at all times, that MCM was as it concerned the facts surrounding Unit 6.

71.     Nautilus never objected to any action plans or cost information that it received from MCM or otherwise claimed that it needed more time or more information related to either the Stack Claim or to Unit 6 when it became a formal claim.

72.     Nautilus affirmatively led MCM to believe that it would be fully reimbursed for the costs of the Unit 6 Claim.

73.     Only after it waited for MCM to fully remove all debris from Unit 6, did Nautilus indicate that it would be denying the Unit 6 Claim.

74.     Nautilus lacked a reasonable justification for the denial of MCM's Unit 6 Claim.

75.     Nautilus did not timely adjust or investigate the Unit 6 claim, despite full knowledge of compliance orders issued by the U.S. military.

76.     By denying MCM's Unit 6 Claim, Nautilus acted in an arbitrary and/or capricious manner.

77.     It was reasonably foreseeable that Nautilus' bad faith claim denial would result in additional damages to MCM, including its actual attorney fees, interest, and costs.

78.     As a direct and proximate result of Nautilus' denial of MCM's claim(s), MCM has been damaged in the principal amount of $1,299,157.66 and punitive damages to be determined at trial.

WHEREFORE, MCM Management Corp. respectfully requests this Honorable Court enter a judgment in its favor against Defendant Nautilus Insurance Company, in the principal amount of $1,299,157.66, punitive damages, plus interest, costs, reasonable attorney fees and any other relief that this Honorable Court deems fit to award.

Respectfully submitted,

Joshua C. Berns (0090627)
ULMER & BERNE LLP
65 East State Street, Suite 1100
Columbus, Ohio 43215
(614) 229-0040/Fax: (614) 229-0041
jberns@ulmer.com

and

Jason P. Conte (0071401)
ULMER & BERNE LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
(513) 698-5072/Fax: (513) 698-5073
jconte@ulmer.com

*Attorneys for Plaintiff*
*MCM Management Corp.*

11

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable by a jury.


Respectfully submitted,


Joshua C. Berns (0090627)
ULMER & BERNE LLP
65 East State Street, Suite 1100
Columbus, Ohio 43215
(614) 229-0040/Fax: (614) 229-0041
jberns@ulmer.com

and

Jason P. Conte (0071401)
ULMER & BERNE LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
(513) 698-5072/Fax: (513) 698-5073
jconte@ulmer.com

*Attorneys for Plaintiff*
*MCM Management Corp.*

## **PRAECIPE**

Please serve the Defendant with a copy of the COMPLAINT and SUMMONS via CERTIFIED MAIL, RETURN RECEIPT, and via ORDINARY U.S. MAIL.

Joshua C. Berns (0090627)
ULMER & BERNE LLP